IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
AT BUFFALO

JEFFREY MILLER
    AND
PAULA MILLER
5650 YOUNG ROAD
LOCKPORT, NY 14094

    PLAINTIFFS

vs.

COLTON RV, LLC
3122 NIAGARA FALLS BLVD.
N. TONAWANDA, NY 14120

    DEFENDANT

CASE NO.

COMPLAINT AND JURY DEMAND

## FIRST CLAIM

1. This case involves the sale of a 2021 Thor Motor Coach Sequence recreational vehicle which occurred in North Tonawanda, New York. Thor Motor Coach, Inc. ("Thor") manufactured the subject RV and Colton RV, LLC ("Colton RV") sold it to Plaintiffs at retail and warranted the subject RV under its 30 day limited warranty. The retail cash sale price to Plaintiffs was $113,423.08. Plaintiffs paid $40,000 total down toward the total cost and Colton RV arranged for Niagara's Choice Credit Union to pay the balance of the RV cost under the terms of a Loan Agreement with Plaintiffs, making the total cost of the RV $149,948.79, with $109,948.79 of that amount agreed by the parties to be paid at the rate of $612 monthly beginning December 9, 2022, until paid in full.

1

2. Jurisdiction exists with this Court because (a) the amount in controversy is more than $75,000 and a federal claim exists under the Magnuson Moss Warranty Act[1], thereby invoking 28 U.S.C. 1331.

3. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

4. The motor vehicle transaction involved in this case is subject to and covered by the Breach of Contract and express and implied warranty laws of the New York Commercial Code-Sales[2] and the Consumer Protection from Deceptive Acts and Practices[3] and the False Advertising[4] laws, the Warranty of Serviceability[5], and the Magnuson Moss Warranty Act[6].

5. The motor vehicle involved in this case was acquired from Defendant by Plaintiffs in North Tonawanda, New York and the place where the relationship of the parties arose is North Tonawanda, New York because the obligations of Defendant to Plaintiffs arose in North Tonawanda, New York.

IDENTIFICATION OF PARTIES

6. Paula Miller and Jeffrey Miller are natural persons who entered into a series of consumer transactions with Defendant in North Tonawanda, New York, in October 2022 and were at

---

[1] 15 U.S.C. 2301 et seq

[2] NY CLS UCC 2-101 et seq.

[3] NY CLS Gen Bus 349 et seq.

[4] NY CLS Gen Bus 350 et seq.

[5] NY CLS Veh & Tr 417 et seq.

[6] 15 U.S.C. 2301 et seq.

that time citizens of and domiciled and residing in New York and are consumers and buyers within the meaning of all applicable laws. Paula is a retired teacher and Jeffrey is a police officer who became disabled and retired. Plaintiffs are ordinary consumers who lack the bargaining power of the sophisticated commercial business enterprise that is Colton RV in the marketplace, such that there is a substantial disparity in bargaining power between Plaintiffs and Defendant.

7. Defendant Colton RV was at all times relevant a sophisticated supplier and merchant and limited liability company doing business in New York and elsewhere under the name of Colton RV and is the seller who entered into a consumer transaction with Plaintiffs for the sale of the subject RV in North Tonawanda, New York, in October 2022. Colton RV has its principal place of business in and is a citizen of New York and domiciled and residing in New York. Colton RV was, at all times relevant, engaged in the business of selling and financing the sale and service of recreational and other motor vehicles through its authorized dealerships and agents that it maintains in North Tonawanda, New York and elsewhere.

8. All representations to Plaintiffs by all employees of Defendant were given as part of their normal, duly authorized work responsibilities on behalf and as an employee of Defendant and within the scope of their employment, such that they were each and every one an agent of Defendant at all times relevant.

FIRST CLAIM: BREACH OF CONTRACT

9. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein, including those that precede and those that follow this paragraph and this claim.

10. This claim is in addition to and/or in the alternative to all other claims in this Complaint.

11. This claim is for breach of contract by Colton RV.

12. In the Fall of 2022, Plaintiffs became interested in owning a motorcoach so they could conveniently and comfortably travel to visit family, go fishing in Montana and the Northwest, British Columbia, Idaho and to see the country in the convenience and comfort that appeared to be offered by a motorcoach and be able to take their dogs, Finn and Cuin, with them everywhere they went.

13. Subsequently Plaintiffs went to Defendant's RV dealership to see what alternative models would fit their intended use and needs and after discussions with Rhianna Tyrrell, one of Defendant's sales employees, Plaintiffs were mostly interested in a used 2021 Thor Sequence RV that was publicly advertised by Defendant as being for sale.

14. A salesperson employee of Defendant, believed to be named Rhianna Tyrrell, represented as fact to the Plaintiffs that the RV was in like new condition and would be delivered to them in like new condition, and after Plaintiffs told Rhianna Tyrrell what they intended to use the RV for, she represented as fact to Plaintiffs that this RV would be perfect for that use and was what they were looking for and that Defendant had in fact gone over the RV with a multiple point inspection to make sure that everything was okay with the rv and that it had no problems. Rhianna Tyrrell also represented as fact to Plaintiffs that the dealer would give them a 30 day warranty on the RV.

15. Plaintiffs still were not sure about buying the RV so they went home to think and talk about it. Later they received a phone call inviting them to come back to the dealership and look at the RV again and saying that they, the Defendant's dealership, would work with them to get

a good price, so they returned.

16. The parties agreed on October 13, 2022 that Defendant would sell to Plaintiffs the subject RV. At that time Plaintiffs paid $5,000 to Defendant as part of a total $40,000 down payment credit toward the total purchase price of the RV. On October 24, Plaintiffs paid the remaining $35,000 down payment to Defendant.

17. To pay the balance of the purchase cost, Defendant referred Plaintiffs to Niagara's Choice Credit Union, saying that Plaintiffs could get a better interest rate there, and on October 25, 2022 the Credit Union paid to Colton RV the balance of the purchase price for the Defendant's sale of the subject RV to Plaintiffs.

18. As part of the transaction Defendant provided a written limited warranty to Plaintiffs on the subject RV but Plaintiffs did not immediately realize that instead of giving them a warranty on the RV, Defendant only gave them a warranty on certain parts of the RV. The Defendant's warranty length was for 30 days or 1,000 miles. Defendant's limited warranty was a "warranty" within the meaning of the Magnuson Moss Warranty Act.

19. As part of the transaction Defendant provided Plaintiffs with a warranty of serviceability.

20. At the delivery of the RV to Plaintiffs, a manufacturer owner manual or warranty booklet was not given to Plaintiffs.

21. At the time of the subject transaction, Defendant knew or should have known, but Plaintiffs did not know, that the subject RV could still be covered by the Thor original manufacturer's new RV 2 year written warranty and that the Thor warranty was eligible for transfer to Plaintiffs as the second purchaser of the subject RV and that the Thor warranty would be active upon that a transfer. Defendant did not tell Plaintiffs about this and Defendant did not

have the Thor warranty transferred over to Plaintiffs. Plaintiffs did not know that it could be.

22. In the course of the transaction Defendant failed to inform Plaintiffs that they were eligible for the remainder of the factory warranty and did not provide them with the paperwork for the remainder of the warranty.

23. Subsequently, the Thor factory warranty expired without Plaintiffs learning that they could have had the protection and help of the remainder of the warranty if they had just been told about it by Defendant This matters because in less than three weeks the motorcoach would end up back in the Defendant's repair shop for repairs.

24. Had the Millers known the truth about the recreational vehicle's condition, they never would have purchased the recreational vehicle. Had Plaintiffs known that the original Thor factory warranty was available to them for coverage of the subject motorcoach they would have insisted that it be, or they could have themselves, transferred it to Plaintiffs. But for the Defendant's failure to so advise Plaintiffs, it would have been transferred to Plaintiffs.

25. Prior to selling the recreational vehicle to Plaintiffs, Defendant knew or should have known about the recreational vehicle's condition, but instead of accurately telling the Millers about the recreational vehicle's condition, Defendant kept that information a secret and misrepresented it to Plaintiffs.

26. On November 14, 2022 the motorcoach was returned to Defendant for repairs of the sliding screen door, keys that were not given them for the Bike rack and the Roof rack, a missing key fob for the vehicle, foam insulation tape that was peeling from the bathroom vent area, and trim that was not secured properly. Later Plaintiffs were told the repairs were done so they picked up the motorcoach on November 20, 2022, after it had been subjected to repair

attempts by Defendant for about 7 days. After that, Plaintiffs realized that the foam tape was not fixed, the bike and roof rack keys were not provided, and Defendant replaced the tumbler in the bike lock but that didn't work and Plaintiffs had to return two weeks later for another repair of the lock.

27. With each repair attempt on the subject vehicle by Defendant, it gave to Plaintiffs an implied warranty that the work had been performed in a good workmanlike manner.

28. Within 30 days after buying the motorcoach Plaintiffs notified Defendant about the total loss of all electric in the "house" portion of the motorcoach and Defendant made an appointment for December 2, 2022 for Plaintiffs to bring the motorcoach in for repair. Plaintiffs told the Defendant that the sliding door and bathroom vent were not fixed the first time and needed to be fixed now.

29. On December 2, 2022 the motorcoach went into the Defendant's repair shop and was there for 8 days while Defendant presumably tried to fix everything. Plaintiffs got the motorcoach back on December 9, 2022. In the coming days they realized that things had not been fixed after all.

30. A few days later, on December 13 Plaintiffs called Defendant and complained that they had promised everything would be fixed but it wasn't and told Defendant that he would send them a list of the problems by email with some pictures to make it clear. Plaintiffs did that, advising that the bathroom vent was not right, the motorcoach had been left dirty after the last repair attempt, he had been promised a full gas tank, apparently for his troubles and inconvenience, but they did not do it, and the total electrical power failure had not been fixed. In response by email Defendant told Plaintiffs that his email would be "passed on."

31. Later that day, On December 13, Plaintiffs had a nearly 2 hour long meeting with Lawrence the service manager and Rob Neuner, the finance manager of the dealership, reviewing everything, including the repair attempts that did not work and Defendant's theory that a pinched wire had caused the "house" total electrical failure , and what still had not been fixed and Defendant promised Plaintiffs that all of the problems would be "handled completely" to his satisfaction.

32. On December 14, Plaintiffs emailed Defendant to say that Thor had said told him that a pinched wire was not the cause of the circuit breaker tripping and it was possibly the inverter or alternator and that he wanted to know the real reason for the total power failure.

33. On December 22, 2022 the motorcoach was back in Defendant's repair shop again for the repair of 3 of the same problems as the last time and which Defendant had not fixed, those being the power loss problem and the screen door and bathroom vent not being fixed.

34. 36 days later, on January 25, Defendant told Plaintiffs the motorcoach was repaired and ready to be picked up, so Plaintiffs made an appointment for January 27 at 1:00 pm to pick up the motorcoach and finally take it home so they could begin planning to use it for the traveling they had bought it for in the first place.

35. On January 27, Plaintiffs went to pick up the repaired rv. Upon arriving, they discovered that Defendant's mechanic was still working on the RV. Now the main roof vent was leaking and the interior was dripping with moisture virtually everywhere. The motorcoach was worse than it was when they left it there in the first place. The Defendant's Service Manager, Lawrence Nwosu, said they would "look into" the needed repairs and would dry out the interior. Plaintiffs left.

36. On February 8, 2023 Plaintiffs called Defendant's service manager, Lawrence Nwosu, but could only leave a message asking him to call them so they could learn what was going on with the RV. He did not call them back.

37. On February 10, 2023 Plaintiffs called Thor and learned that they were not the registered owner of the motorcoach on Thor's records, so they emailed the vehicle identification number to Thor so they would be in the manufacturer's system as the owner. Plaintiffs also learned from Thor that the motorcoach actually was covered under the Thor warranty when it was sold to Plaintiffs but that a warranty transfer form had to be completed to transfer the warranty over to them but it expired on January 15, 2023. Thor also told them that no warranty preauthorization requests had been received by Thor, and no parts orders had been ordered from Thor for the motorcoach until January 27.

38. The motorcoach is still at Colton RV's repair shop and has been for about 199 days total.

39. Plaintiffs purchased the subject vehicle in reliance on advertising and/or representations of fact and/or express and/or implied warranties of the Defendant.

40. After purchasing the vehicle, Plaintiffs discovered that it did not conform to the representations of fact and the vehicle written express and implied warranties made by the Defendant inasmuch as the vehicle was not as represented and was plagued with one or more substantial defects and malfunctions which were covered by Defendant's express and implied warranties but which Defendant was unable to repair within a reasonable number of opportunities and attempts and within a reasonable amount of time.

41. After purchasing the vehicle Plaintiffs discovered that it was not in sufficient condition and repair to render it under normal use satisfactory and adequate service upon the public

9

highway at the time of delivery. Plaintiffs provided Defendant with a reasonable opportunity and time to cure its breach of the warranty of serviceability but it failed to do so within a reasonable opportunity and within a reasonable time.

42. With each repair and service Defendant rendered, it gave Plaintiffs an implied warranty that the work was completed in a good workmanlike manner and in light of the fact that Plaintiffs complained of some defects and malfunctions which Defendant did not fix at all, Defendant breached the said implied warranty on each and every repair service.

43. The above conditions and non-conformities of the recreational vehicle constituted a breach of the Dealer's advertisements and/or representations and/or warranties and representations that induced Plaintiffs to purchase the subject vehicle from Defendant.

44. The above conditions and non-conformities of the recreational vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiffs.

45. As a result of the above facts, the Defendant breached its advertisements and/or representations and/or warranties with respect to the vehicle.

46. Defendant had notices of the breaches within a reasonable time, but failed to cure same.

47. As a result of the above facts, inter alia, in connection with the sale of consumer merchandise to Plaintiffs, Defendant committed one or more prohibited practices relating to material facts upon which it intended Plaintiffs to rely and which they did rely upon, and Defendant knew or should have known it was doing so, including but not limited to:

    A. Falsely represented the condition of the recreational vehicle to Plaintiffs;

    B. Concealed the recreational vehicle's true condition from Plaintiffs;

    C. Stalled and delayed and failed to timely respond to Plaintiffs after delivery of

      the recreational vehicle to them in a damaged condition;

   D. Representing that repair work and services had been performed when in fact they had not.

48. Plaintiffs suffered and shall continue to suffer an ascertainable loss of money or property, including but not limited to actual, incidental and consequential damages, as a direct and proximate result of Defendant's commission of unfair and/or deceptive and/or fraudulent prohibited practices, and its refusal or other inability to cure the breach.

49. Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the above.

## SECOND CLAIM: VIOLATION OF NEW YORK CONSUMER PROTECTION STATUTES

50. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

51. This claim is in addition to and/or in the alternative to all other claims in this Complaint.

52. This claim is for Defendant's violations of New York's Consumer Protection from Deceptive Acts statute, GBL 349 - 350 et seq.

53. Colton motorcoach conducted trade and commerce in New York and elsewhere within the meaning of GBL 349-350 at all relevant times to Plaintiffs' claims.

54. Specifically, Colton motorcoach was and is engaged in, among other things, the sale of recreational vehicles, products and services related to recreational vehicles and repair services and products used to make those repairs to those vehicles for the consuming public, including Plaintiffs.

55. Upon information and belief, Defendant dealt with Plaintiffs as they would have with any customer contacting Defendant to purchase a motorcoach.

56. Upon information and belief, Colton motorcoach sold the motorcoach and related services and repair services for the motorcoach to Plaintiffs with standard documents presented to any customer upon an agreement to sell those goods and services to any similarly situated customer.

57. Upon information and belief, the sale of recreational vehicles and lending money to purchase recreational vehicles is not unique to these specific parties, was not private in nature, or a "single shot transaction."

58. Each of these actions was consumer-oriented, and involved misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

59. Upon information and belief, Colton motorcoach regularly advertises on the internet and otherwise in New York to consumers in the public marketplace for the purpose of soliciting the sale of recreational vehicles by it to consumers in the New York marketplace and other marketplaces.

60. The acts and omissions and practices exercised by Colton motorcoach as recited above were each and every one willfully and/or knowingly committed.

61. The deceptive acts and omissions and practices exercised by Colton motorcoach as recited above were each and every one in relation to and part of a consumer transaction between it and Plaintiffs, in that Plaintiffs were purchasing from and Colton motorcoach was selling to

Plaintiffs the described goods and services for their family, household, and/or personal use, and thus were "consumer oriented."

62. The acts and omissions and practices by Colton motorcoach as recited above were each and every one misleading in a material respect, in that as part of the consumer transaction between the parties, Plaintiffs paid $40,000 plus caused to be paid an additional $73,000 on their behalf and became obligated to pay over $109,000 in principal and interest charges in the course of the consumer transaction with Defendant, which they would not have done if they had known the truth about the transaction, which Colton motorcoach knew but concealed from Plaintiffs.

63. The acts and omissions and practices exercised by Colton motorcoach as recited above were each and every one injurious to and directly and proximately caused injury to Plaintiffs as described above.

64. N.Y. GBL 350 declares any false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York to be unlawful.

65. N.Y. GBL 350-a defines false advertising as including "representations made by statement, word, design, device, sound or any combination thereof" and also takes into account the extent to which advertising fails to reveal facts material in the light of such representations with respect to the commodity to which the advertising relates.

66. The acts and omissions and practices exercised by Colton motorcoach as recited above were each and every one advertising and false advertising in the conduct of the business and trade and commerce of Colton motorcoach which occurred in New York.

67. The false advertising acts and omissions and practices exercised by Colton motorcoach as

recited above, and which include failing to reveal facts that were material as further described above, were each and every one in relation to and part of a consumer transaction between it and Plaintiffs, in that Plaintiffs were purchasing from and Colton motorcoach was selling to Plaintiffs the described goods and services for their family, household, and/or personal use, and thus were "consumer oriented."

68. The false advertising acts and omissions and practices exercised by Colton motorcoach as recited above, and which include failing to reveal facts that were material as further described above, were each and every one misleading in a material respect, in that as part of the consumer transaction between the parties Plaintiffs paid and/or became obligated to pay over $140,000 in the course of the consumer transaction with Defendant, and which they would not have done if they had known the truth about the transaction which Colton motorcoach knew but concealed from plaintiff.

69. The false advertising acts and omissions and practices exercised by Colton motorcoach as recited above, and which include failing to reveal facts that were material as further described above, were each and every one injurious to and directly and proximately caused injury to Plaintiffs as described above.

70. Plaintiffs relied on the truthfulness of the representations, advertisements, statements, and acts of Colton motorcoach and on there being no omissions of any material matters, and had a right to so rely, and were deceived by Colton motorcoach to their injury and damage. In its dealings with Plaintiffs, Colton motorcoach and its employees who dealt with Plaintiffs knew or should have known that Plaintiffs were acting in reliance on the truthfulness of the representations, advertisements, statements, and acts of Colton motorcoach and on there

being no omissions of any material matters.

71. In the course of the consumer transaction between the parties, Colton motorcoach and its employees who dealt with Plaintiffs concealed its deceptive, false, and misleading acts and omissions.

72. Each and every one of the acts, omissions, and practices described above affect the consumer public at large in that, among other things, the deceptive acts and omissions of Colton RV, in violation of the New York laws, enable Colton motorcoach to gain a competitive economic advantage over honest and law-abiding motorcoach retail sellers in the marketplace by its deceptive acts and practices and material omissions and false advertising, thus causing economic harm in the marketplace and thereby affecting the consumer public at large.

73. Each and every act and omission and practice set forth above as exercised by Colton motorcoach was and is deceptive to the Plaintiffs and any consumer purchaser and the practice of each and every such act or omission or practice by Colton motorcoach was and is injurious and deceptive to Plaintiffs and the public and consumers at large and is a violation of NY GBL 349 et seq and/or NY GBL 350 et seq.

74. As a result of the above facts, Defendant violated NY GBL 349 et seq and/or NY GBL 350 et seq directly and/or proximately causing Plaintiffs injury and damage.

### THIRD CLAIM: BREACH OF WARRANTY OF SERVICEABILITY

75. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

76. This claim is in addition to and/or in the alternative to all other claims in this Complaint.

77. This claim is for Defendant's breach of the warranty of serviceability.

78. Defendant sold to Plaintiffs a used motor vehicle and in the course provided Plaintiffs with a certification that the subject vehicle was in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery and otherwise as required by NY CLS Veh & Tr 417 when in fact it was not.

79. As a result of the above facts, Defendant violated NY CLS Veh & Tr 417 et seq and directly and/or proximately causing Plaintiffs injury and damage.

### FOURTH CLAIM: VIOLATION OF MAGNUSON MOSS WARRANTY ACT

80. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

81. This claim is in addition to and/or in the alternative to all other claims in this Complaint.

82. This claim is for Defendant's violation of the Magnuson Moss Warranty Act.

83. In the course of a consumer transaction between the parties, the Defendant provided Plaintiffs a written warranty and implied warranty covering the consumer goods being sold.

84. As a result of the above facts, the Defendant breached its express and/or implied warranties and representations with respect to the vehicle.

85. One or more of the defects and malfunctions in the vehicle were covered under the terms of the Defendant's warranties, and Defendant failed to repair the vehicle within a reasonable time and within a reasonable opportunity, thereby breaching the warranties, violating the Magnuson Moss Warranty Act, and diminishing the use and/or safety and/or value of the vehicle.

86. As a result of the above, inter alia, the Defendant is in violation of the Warranty Act by its

failure to comply with its warranty obligations.

87. Plaintiffs asked the Defendant to take the vehicle back and refund their money but the Defendant has not or will not do so.

88. As a result of the above, inter alia, Defendant is in violation of the Warranty Act by its failure to comply with its warranty obligations

89. As a result of the above facts, Defendant violated its obligations under the Magnuson Moss Warranty Act and directly and/or proximately causing Plaintiffs injury and damage.

**WHEREFORE**, judgment is demanded against Defendant as applicable according with the allegations above, hereinafter, as deemed proper and lawful by the Court, as follows:

**PRAYER FOR RELIEF**

1. On the first claim, such actual damages of more than $50,000 as proven at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial and/or an award of a full purchase price;

2. On the second claim, such actual damages of more than $50,000 as proven at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial and/or an award of a full purchase price;

3. On the third claim, such actual damages of more than $50,000 as proven at trial, punitive damages, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial and/or an award of a full purchase price;

4. On the fourth claim, such actual damages of more than $50,000 as proven at trial, and any and all other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial and/or an award of a full purchase price;

### ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in one of the claims above, rescission or revocation of the contract plus remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date the contract was agreed to, and an Order finding Plaintiffs to have rescinded the transaction and/or to have revoked acceptance, reasonable attorney fees; together with any and all other legal and equitable relief deemed necessary and just, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiffs demand trial by Jury on all claims and all issues.

Respectfully submitted,

/s/ Ronald L Burdge
Ronald L Burdge
Attorney for Plaintiffs
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone:   937.432.9500
Facsimile:   937.432.9503
Email:       Ron@RvLemonLaw.com

Y:\data\Miller, Jeffrey & Paula\Core Pleadings\DRAFT Complaint rb 062723.wpd